MOSK, J.
 I concur in the judgment.
Like the author of the lead opinion, I am of the view that Juror Katherine Elizabeth Boje committed prejudicial misconduct bearing on the question of sanity. My reasons are as follows.
In In re Carpenter (1995) 9 Cal.4th 634 [38 Cal.Rptr.2d 665, 889 P.2d 985], the majority recognized, under In re Hitchings (1993) 6 Cal.4th 97 [24 Cal.Rptr.2d 74, 860 P.2d 466] and People v. Holloway (1990) 50 Cal.3d 1098 [269 Cal.Rptr. 530, 790 P.2d 1327], that it is misconduct “for a juror to receive information outside of court about the pending case . . . .” (In re Carpenter, supra, 9 Cal.4th at p. 647.)
The Carpenter majority also recognized, under decisions including Holloway and People v. Marshall (1990) 50 Cal.3d 907 [269 Cal.Rptr. 269, 790 P.2d 676], that juror misconduct “gives rise to a presumption of prejudice . . . .” (In re Carpenter, supra, 9 Cal.4th at p. 651; see id. at p. 650.) That means, of course, that “unless the prosecution rebuts that presumption . . ., the defendant is entitled to a new trial.” (People v. Pierce (1979) 24 Cal.3d 199, 207 [155 Cal.Rptr. 657, 595 P.2d 91]; accord, e.g., People v. Marshall, supra, 50 Cal.3d at p. 949; People v. Miranda (1987) 44 Cal.3d 57, 117 [241 Cal.Rptr. 594, 744 P.2d 1127]; In re Stankewitz (1985) 40 Cal.3d 391, 402 [220 Cal.Rptr. 382, 708 P.2d 1260]; see People v. Holloway, supra, 50 Cal.3d at p. 1108.)
But, without mentioning the presumption of prejudice, the Carpenter majority went on to “summarize” the law relating to the determination of prejudice, as follows: “[W]hen [juror] misconduct involves the receipt of information from extraneous sources, the effect of such receipt is judged by a review of the entire record, and may be found to be nonprejudicial. The verdict will be set aside only if there appears a substantial likelihood of juror bias. Such bias can appear in two different ways. First, we will find bias if the extraneous material, judged objectively, is inherently and substantially likely to have influenced the juror. [Citations.] Second, we look to the nature of the misconduct and the surrounding circumstances to determine whether it is substantially likely the juror was actually biased against the defendant.” (In re Carpenter, supra, 9 Cal.4th at p. 653.)
When it is read literally and in the abstract, the Carpenter majority’s “summary” is problematical. The statement that “ [t]he verdict will be set aside only if there appears a substantial likelihood of juror bias” (In re Carpenter, supra, 9 Cal.4th at p. 653, italics added) seems to imply that the verdict will not be set aside if the reviewing court cannot determine whether *592 or not there is, in fact, a substantial likelihood of such bias. An implication of this sort, which shifts the risk of nonpersuasion from the People to the defendant, amounts to a presumption of nonprejudice. In his dissenting opinion in People v. Von Villas (1995) 36 Cal.App.4th 1425, 1455 [43 Cal.Rptr.2d 233], Justice Woods wrote: “The summary is more than inaccurate, it is irreconcilable with Marshall, Holloway, and Hitchings. These three cases hold, as do a legion of earlier ones, that juror misconduct, such as the receipt of extraneous information, raises a presumption of prejudice. Quite apart from and prior to any ‘review of the entire record’ the misconduct itself raises a presumption of prejudice which requires a reversal unless rebutted. This fundamental principle is omitted from [the] summary.” (Original italics.)
But when it is read reasonably and in context, the Carpenter majority’s “summary” is sound. Considered together with the presumption of prejudice, it may be understood thus: “When juror misconduct involves the receipt of information from extraneous sources, the effect of such receipt is judged by a review of the entire record. The verdict will be set aside unless there appears no substantial likelihood of juror bias. Such bias can appear in two different ways. First, we will find bias unless the extraneous material, judged objectively, is not inherently and substantially likely to have influenced the juror. Second, looking to the nature of the misconduct and the surrounding circumstances, we will also find bias unless it is not substantially likely the juror was actually biased against the defendant.” (Cf. In re Carpenter, supra, 9 Cal.4th at p. 653 [source of the recast language].)
Turning to the present matter, I believe that Juror Boje committed misconduct bearing on the question of sanity. The facts compel this conclusion. Although Boje’s initial exposure to the woman who spoke about defendant in the bar was innocent and passive,[1] her subsequent decision to remain there for half an hour, her failure to disclose the incident to the court, and her use of what she heard there during deliberations with the other jurors on sanity, cannot be so characterized. I also believe that Boje’s misconduct gives rise to a presumption of prejudice. The law compels this conclusion. All the decisions cited above are in accord. Nevertheless, I cannot determine whether or not there is, in fact, a substantial likelihood of bias. Defendant claims “actual” and not “inherent” bias. One can reasonably conclude either that Boje was “actually” biased by what she heard or that she was not, *593 depending on whether one infers either that she was herself influenced or that she was simply attempting to influence others. With matters thus in equipoise, the presumption of prejudice stands unrebutted. Defendant is therefore entitled to a new trial on the question of sanity.

And unsurprising. In his dissenting opinion, Justice Baxter proves the point. All the events that are pertinent here—which were notorious throughout the state—took place in rural Tuolumne County, with a population of only 53,100: defendant killed the victim in Jamestown, a small and unincorporated community; and she was tried in Sonora, the county seat and largest town, which is about 10 miles away, with a population of only 4,390. (Dis. opn. of Baxter, J., post, at p. 593, fn. 1.)

The homicide occurred in April 1993 in Jamestown, a small, unincorporated Tuolumne County community where the preliminary hearing on the molestation charges against Driver was being held. On July 1, 1994, the population of Tuolumne County as a whole was only about 53,100. (Cal. Dept. of Finance, Cal. Statistical Abstract (Nov. 1995) p. 13.) Defendant’s trial took place in late 1993 in Sonora, the county seat of Tuolumne County and its largest town. On January 1, 1994, the population of Sonora, which is less than 10 miles from Jamestown, was approximately 4,390. (Id. at p. 14.) Despite the likelihood of local gossip, rumor, and discussion of the case within this close-knit community, the record discloses no effort by defendant to sequester the jury at either the guilt or sanity trials.